# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF HAMPSHIRE, FRANKLIN, AND HAMPDEN, SEPTEMBER TERM 1834, AT NORTHAMPTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

## Moses Rathbun *et ux. versus* George Colton *et al.*

A testator, after appointing trustees to hold his estate during the lives of his children, directed that they should appropriate the rents and profits to the support of his children, in certain proportions, and that if either or all of his children should become necessitous, and it should be adjudged by the trustees more for the benefit of his children to sell all or a part of the estate for the benefit of either or all of his children, the trustees should be authorized to sell all or a part thereof, and appropriate all or a part of the proceeds thereof, in the same proportions, to the support of his children, their heirs or wives; he further provided, that in case of the death of either of his sons, the trustees should apply the rents and profits of the estate to the support of their wife or wives and their children, during the life or lives of their wife or wives, in the same proportions. It was *held*, that the trustees were not authorized to sell any portion of the estate for the purpose of relieving the necessities of the widow of one of the sons of the testator; and that in case only one of the children of the testator should be necessitous, and a partial sale should be made for his relief, the whole of the proceeds might be applied for his benefit to an extent not exceeding his share of the estate, instead of being divided among all the children in the proportions specified in the will.

In a suit in equity by the widow of one of the sons of such testator, against a trustee appointed by the judge of probate, in pursuance of the will, in the place of the original trustees, it appeared, that a sum of money had been awarded and paid to the defendant for damages occasioned by the laying out a road over the estate

Rathbun
v.
Colton.

It was *held*, that the plaintiff was not entitled to receive a share of this sum, but that it must follow the disposition of the residue of the estate.

In the same suit it appeared, that the defendant had been of opinion, that the interests of all concerned would be best promoted by a sale of the estate, and that the necessities of one of the *cestui que trusts* were such as would authorize such sale, but some of the *cestui que trusts* petitioned the judge of probate to remove the defendant from office, or restrain him from proceeding in the sale; and upon a hearing, although no decree was made, the defendant was admonished by the judge, that if he persisted in attempting to sell, he would be removed from office, and the project of a sale was, in consequence, abandoned. It was *held*, that it was not the duty of the defendant to persist in the sale, and appeal from a decree of the judge of probate to the supreme court of probate, unless requested so to do by some one having an interest in the trust estate.

In the same suit it was *held*, that the trustee was not to be allowed for expenses incurred in making permanent improvements on the trust estate; but that in making repairs, regard should be had to the probable duration of the trust, in determining whether temporary and slight or more permanent and thorough repairs should be made.

But where the rent of a trust estate is increased in consequence of *improvements* made by the trustee, the *cestui que trust* may be put to his election, either to allow the trustee the expense of such improvements, or be deprived of the increase of rent obtained by means thereof.

It appeared in the same suit, that a motion had been made for an injunction to restrain the trustee from making any repairs upon the estate, except such as were necessary for the temporary preservation of the buildings; that upon a hearing at chambers, the judge declined to order an injunction, and stated as a reason, that the motion, with notice to the trustee, would be sufficient to save the rights of the plaintiffs, and that the trustee would not be allowed any expenditures, which the Court, upon a hearing, should consider that he was not authorized to make; and that no formal decision was made on the application. It was *held*, that it was not the duty of the trustee thereupon to stay proceedings in regard to repairs until the decision of the cause, and that expenses for repairs incurred afterwards might be allowed.

There is no objection, in principle or by the practice of the Court, to the allowance of commissions in a trustee's account, in connexion with an allowance of specific charges for services, provided the whole does not exceed a just compensation; the allowance of commissions is, in such case, to be considered as a compensation for the services not specifically charged.

BILL in equity. The bill alleges, that Thomas Bates, of Springfield, was possessed of a large amount of real and personal estate, including a messuage and tavern stand, in that town ; that, in April, 1820, he made his will, whereby he appointed Edward Pynchon and Roger Adams trustees of his estate, to hold the same during the lives of the three children of the testator, Phœbe, Henry, and Harvey, or either of them ; that the testator, after making provision for the support of his wife and her daughter, and the payment of his debts, directed the trustees to appropriate the residue

of the rents and profits of his estate to the support of his three children, namely, to Phœbe, who was married to Jeremy Warriner, one fifth part, and to his two sons, Henry and Harvey, two fifth parts each, and to their heirs ; that he further directed, that, if either or all of his children should become necessitous, and it should be adjudged by the trustees, more for the benefit of his children, to sell all or a part of the estate for the benefit of all or either of his children, the trustees should be authorized to sell all or part thereof, and appropriate all or a part of the proceeds thereof in the proportions above stated, to the support of his children, their heirs or wives, provided that no part of the estate should be appropriated to the payment of any debt which his children had contracted or might contract ; that he further provided, that, after the death of his children, there should be paid out of his estate to Merrick Bates, son of Harvey, the sum of $500, when he should arrive at the age of twenty-one years ; and to Lydia Bates, daughter of Harvey, the sum of $100, provided that the same should not be paid to her till of the age of eighteen years, and that Merrick and Lydia should inherit the residue of his estate in the same manner as his other heirs ; that the testator further directed, that after the death of all his children and their wives, the trust should cease, and his estate should descend to his heirs, and that in case of the death of either of his sons, the trustees should apply the rents and profits of the estate to the support of their wife or wives and their children, during the life or lives of their wife or wives, in the proportions before stated ; that he further directed, that in case of the death or refusal to act, of either or both of the trustees, whom he also constituted his executors, the judge of probate should appoint some person or persons to carry into effect the provisions of the will, and that the whole of his estate should be appropriated by the trustees to the benefit of his children, in the manner therein set forth, after paying the reasonable charges and expenses of the trustees ; that the testator died on or about March 29, 1823, and that the will was afterwards duly proved and allowed ; that Pynchon and Adams declined to act as trustees and executors ; that afterwards on August 5, 1824, the

40 *

Rathbun
v.
Colton.

defendant, Colton, was appointed by the judge of probate sole trustee of the estate under the will, and accepted the trust ; that the plaintiff, Roxana, was at the time of the execution of the will, married to Henry Bates, who died on July 6, 1822, leaving no issue, and that she has intermarried with the plaintiff, Moses Rathbun, since the death of the testator ; that Colton, till very recently, has been of opinion that the interest of the plaintiff, Roxana, and others concerned, required that the estate should be sold and the proceeds applied according to the directions of the will, and has frequently expressed such opinions ; that it would manifestly be for the interest of the legatees, that the estate should be so sold, and that it is the duty of Colton to sell the same ; that the plaintiff, Roxana, has been, for the space of seven years, necessitous, and in need of her share of the rents and proceeds and income of the estate, and that Colton has been requested to pay over to her such share, but that he has refused to pay over any part thereof ; that Harvey Bates and his wife and children are also necessitous and in need of their share of the rents and proceeds and income of the estate ; that Harvey commenced against Colton a suit in equity, to compel him to pay over his share of the proceeds of the estate and to make sale thereof ; that Colton, as he alleges, and as the plaintiffs believe, made sale of a part of the estate for the sum of $500 or thereabouts, with a view to provide for the necessities of Harvey out of the principal sum produced by the sale, and to induce him to withdraw the suit, with assurances of setting him up in the business of a victualler and grocer, and that thereupon the suit was settled by the parties ; that the plaintiffs have requested Colton to pay over to them one fifth part of the proceeds of the sale, but he has refused so to do ; that the sale of that part of the estate will be very injurious to the residue thereof, and that it ought not to have been sold separately and the principal or any portion thereof paid to Harvey ; that the buildings upon the residue of the estate are now much out of repair ; that the estate may now be sold for its full value, and for a sum the net income of which would be much above any net income which can be derived from the estate itself, and that the estate

in that form may be managed at much less expense ; that Colton has made large and expensive additions and alterations in the estate, beyond ordinary repairs to preserve the same ; but that Colton pretends, that, although he knows it would be most for the interest of the persons entitled to shares of the proceeds of the estate, that it should be sold and the proceeds appropriated to their support, or put at interest for their benefit, yet that he cannot safely do the same without the direction of the Court ; that he further pretends, that all the rents and profits of the estate, which have come into his hands since his appointment as trustee, have been expended by him in alterations, repairs, or improvements ; whereas the plaintiffs charge the contrary to be true, or that if Colton has so expended the same, it was without any just authority, and for the benefit of Warriner (who was the lessee of the trust estate) and his wife, and contrary to the true intent of the testator ; that Colton further declares, that if the estate remains unsold, he shall consider it his duty to make certain improvements, repairs, and alterations therein, which will absorb the whole rents and income thereof for several years hereafter ; and the plaintiffs aver, that such expenses and repairs will not enhance the real value of the estate, but will prove a serious injury to the plaintiffs and others interested therein. In consideration whereof, and to the end that Colton, Jeremy Warriner, Phœbe his wife, and Harvey Bates, may make true answers to the matters charged in the bill, and that Colton may set forth all his proceedings as trustee, and may state his account of receipts, charges, and disbursements, &c., and that he may be ordered to pay over to the plaintiffs the share of the rents and income of the estate, and of the proceeds of the part sold, to which they, in the right of Roxana, are entitled, and make sale of the whole of the estate remaining unsold, and to appropriate all or a part of the proceeds for the support of Roxana, according to the directions of the will, and that he may be restrained from making further alterations or improvements in the estate, or from expending the rents and profits thereon, and that the plaintiffs may have such other and further relief &c., the plaintiffs pray, that writs of subpœna may issue to Colton, Jeremy and Phœbe Warriner,

Harvey Bates and his wife and children, commanding them to appear and make answer to the bill, &c.

The case was referred to a master in chancery.

It appeared from the report of the master, that on September 30, 1825, the plaintiff, Roxana, then being sole, conveyed to Jeremy and Phœbe Warriner one of the two fifth parts of the rents and profits to which she was entitled under the will, which conveyance was to continue in force during the lives of Jeremy and his wife and the survivor.

It further appeared, that on October 1, 1832, a road was laid out by the county commissioners in such a manner as to include about half the ground on which the house is situated and a part of that on which the rear buildings are placed, with a reservation of the right to keep the buildings in their present situation for ten years. The damages awarded amounted to the sum of $700, which have been paid to the trustee.

It also appeared, that in 1827 the buildings on the premises were in a very dilapidated state, and that the trustee, being nearly destitute of funds, was unwilling to incur the hazard of putting the premises in a situation in which they could be advantageously leased ; that he was of opinion, that the interest of all concerned would be best promoted by a sale of the whole estate, and that the necessities of Harvey Bates were such as would have authorized a sale ; that the trustee accordingly made preparations for a sale, but that Warriner and his wife and Harvey Bates remonstrated against it, and petitioned the judge of probate to remove the trustee from his office, or restrain him from going on with the sale ; that upon a hearing before the judge of probate, although no decree was made, the trustee was admonished by the judge, that if he persisted in attempting to make a sale, he would be removed from office ; and that the project of a sale was in consequence abandoned, and that since that time extensive repairs and improvements had been made by Warriner, in pursuance of an arrangement between him and the trustee, by which it was agreed, that Warriner should be paid for the same by the accruing rents.

The master further reported, that it was difficult, from the

situation of the buildings and the nature of the work aoue, to determine precisely what were to be deemed repairs and what should be considered as improvements ; that in some instances additions were made which were clearly improvements, and in others, buildings which were in a situation requiring large repairs were removed, and others of a superior construction substituted ; that, in some cases, the whole expense incurred by Warriner was allowed by the trustee, while in others a part or the whole expense incurred was disallowed ; that the sums allowed by the trustee which were for permanent improvements amounted to $536·05, and that the rent was increased in consequence of all the improvements made, including those not paid for, or partially paid for, by the trustee, by the sum of $75 per annum.

It further appeared from the report, that the plaintiffs objected to the allowance of the expenses incurred for improvements ; that the trustee thereupon contended, that if they were not allowed, the plaintiffs should be excluded from the benefit of the increase of the rent occasioned by these improvements ; that this claim of the trustee was perfectly just, and that the master was of opinion, when the subject was first mentioned, that the plaintiffs might be put to their election, either to allow the charges from these improvements, or be deprived of the increased rent obtained by means of them ; but that he could find no authority for such a decision, and that it could not be sustained on principle, and that he, therefore, disallowed the charges for expenses incurred for improvements.

It further appeared by the report, that at the May term of this Court in 1832, a motion was made for an injunction to restrain the trustee from making any repairs or improvements on the premises, except such repairs as were necessary for the temporary preservation of the buildings ; that a hearing was had at the chambers of the judge then holding the Court, and that the judge, in declining to order the injunction, stated as a reason, that the motion, with notice to the trustee, wou.d be sufficient to save the rights of the plaintiffs and put the trustee upon his guard, and that he would not, on the settlement of his account, be allowed any expenditures which

*Rathbun*
*v.*
*Colton.*

the Court, upon a hearing, should consider that he was no authorized to make ; that the counsel on both sides acqui esced in the correctness of this view of the case ; and that no formal decision was made upon the application.

The master reported that the present value of the estate was $7000, and that it was under a lease for five years for $500 per annum, payable quarterly, and that the lessee was to pay the taxes and make repairs.

In regard to the charges in the trustee's account for the relief of the necessities of Harvey Bates, the master reported, that it appeared to him, that the testator intended, that when any real estate should be sold on this account, the proceeds should be divided in the proportions stated in regard to the rents and profits, and that no one could take more than his proportion upon such a dividend ; that the principal ought not to be paid out any faster than the necessities of those in-terested required ; that it ought to be placed by the trustee at interest, and the interest paid annually in lieu of the rents and profits.

The master further reported, that, if the trustee had omit-ted to charge for specific services in relation to his superin-tendence of the repairs, in consequence of having charged his commissions, he should be permitted to prefer an account for those services, and if such account should be reasonable, that it should be allowed.

The master reported, that the trustee had conducted him-self, in the execution of the trust, with good faith and that he had endeavoured to subserve the interest of all concerned in the estate.

The following exceptions, among others, were taken by the plaintiffs, to the report of the master.

3. It appears by the report, that the premises are now leased to Warriner for five years at a rent of $500 per annum, the lessee to pay taxes and make repairs ; whereas it should ap pear, that this lease was made by an arrangement between the trustee and lessee, since the hearing ; and there is no evidence, that it was *bonâ fide*. By the lease there is no obligation on the lessee to make repairs, other than one arising from a clause to " deliver up the premises at the end of the

'erm in as good order and condition, reasonable use and wearing thereof excepted, as the same are now in, or may be put in by the lessor, excepting also unavoidable casualties by fire." There is no engagement to keep the premises in repair during the term. The lessee is in infirm health, and destitute of property, and has given no security.

6. The report states, that the sum of $700 has been paid to the trustee for damages occasioned by the laying out of the road over the estate, and that sum is credited in the trustee's account. The whole of it is expended by him ; commissions are charged upon it ; and no question is raised as to the division or eventual disposition of it. Whereas the plaintiffs claimed, that they were entitled to a share of it ; or, at all events, it should be reserved and put on interest for expenses of removal of the house, or their share of the interest paid to them.

7. The report states, that the trustee, in 1827, adjudged that the premises ought then to be sold, and that Harvey Bates was then so necessitous as to authorize such sale ; that the trustee was proceeding to sell, and on the application of the other defendants, the judge of probate advised against it, and the trustee desisted. Whereas the master ought to have reported, that it was then the duty of the trustee to persist in the sale, and, if need be, to appeal from any decree of the judge.

8. The master reported, that, in some instances, additions were made, which were clearly improvements, and that, in others, buildings requiring considerable repairs were removed and others of a superior construction substituted ; and that in the sum disallowed as being expended for improvements, amounting to $536·05, he has included only the former. Whereas large disallowances should have been made for the latter ; and this principle, or a similar one, should have been adopted, viz. that such repairs only were justifiable as a tenant for life would be obliged to make from time to time, to protect himself against a charge for waste, and that all those repairs beyond this, and which were made to promote the comfort and convenience of one of the *cestui que trusts*, or to advance the interest of those in remainder, ought not to be allowed as against the plaintiffs.

Rathbun
*v.*
Colton

9. The master has allowed the sum of $1043·53 for ex penses incurred in repairs and improvements since the bill was filed. Whereas it should not have been allowed, because the bill prayed an injunction against the incurring of such expenses, and was a notice to the trustee to desist, and because most of these expenses were incurred after a hearing of a motion for an injunction, before one of the judges of this Court, when the trustee was admonished by the judge, that he proceeded at his own risk.

15. The master reports, that three fifths of the proceeds of land sold to relieve the necessities of Harvey Bates should be put on interest, and that the trustee should account to the plaintiff, Roxana, for one fifth of the interest thereof only. Whereas he ought to have reported, that two fifths of the principal ought to have been paid to her, before the filing of the bill, and ought now to be paid to her, and if the Court should otherwise decide, that two fifths of the interest thereof ought to be paid to her.

16. The report allows to the trustee a per diem compensa · tion, and also an annual compensation, and states, that if commissions can, by law, be properly charged on this account, the trustee is entitled to commissions of two and a half per cent on all money actually received ; and that, if he has omitted to charge for specific services in consequence of having charged commissions, he may prefer an account for them, and if properly substantiated, they may be allowed. Whereas it appeared, that no charge of commissions had been made till after the filing of the bill, and the master ought to have so reported ; and ought to have reported, that the trustee's charges of commissions should not in any event be allowed, but only a per diem or annual compensation ; and if the latter, that he should not be permitted to prefer a new account for specific services.

Several exceptions were also taken to the report of the master by the trustee, Colton, among which were the following.

1. Because the master has reported, that the trustee is not o be allowed his charges for certain repairs made by him on the estate, denominated improvements, and that the plaintiffs are not to be excluded from the benefit of the increase of rent

occasioned by such improvements, although he reports, that this would be perfectly just.

2. Because the master has reported as his opinion, upon the construction of the will, that when any real estate should be sold for the relief of the necessities of either of the *cestui que trusts*, the proceeds should be divided in the proportions stated in regard to the rents and profits, and that no one could take more than his or her proportion upon such a dividend. Whereas, by the true construction of the will, the trustee may apply any part or the whole of the proceeds of any such sale for the relief of any or either of the *cestui que trusts*, provided he do not exceed, for any one, the amount of his or her full share in the whole of the trust estate.

The other defendants also excepted to the report of the master, because he reported, that, upon a case of necessity being made out, it would be the duty of the trustee to sell, as well to relieve the wants of the plaintiff, Roxana, as of any of the children of the testator.

*G. Bliss* and *Ashmun*, for the plaintiffs, as to the 8th exception of the plaintiffs, cited 3 Dane's Abr. 215, 221 ; 1 Cruise's Dig. 80 ; *Herlakenden's case*, 4 Co. 62 ; *Bowles's case*, 11 Co. 81 ; *Aston* v. *Aston*, 1 Ves. sen. 264 ; *Vane* v. *Barnard*, 2 Vernon, 738 ; *Parsons* v. *Winslow*, 16 Mass. R. 361 ; as to the 16th exception of the plaintiffs, *Green* v. *Winter*, 1 Johns. Ch. R. 27 ; *Manning* v. *Manning*, 1 Johns. Ch. R. 527 ; as to the 1st exception taken by the trustee, *Green* v. *Winter*, 1 Johns. Ch. R. 27 ; *Harrison* v. *Harrison*, 2 Atk. 120 ; *Bostock* v. *Blakeney*, 2 Bro. C. C. 656 ; as to the 2d exception of the trustee, *Cowper* v. *Cowper*, 2 P. Wms. 741 ; 1 Madd. Ch. Pr. 441.

*Lathrop* and *Willard*, for the defendants, as to the 16th exception of the plaintiffs, cited *Barrell* v. *Joy*, 16 Mass. R. 221 ; *Green* v. *Winter*, 1 Johns. Ch. R. 27 ; as to the point, that the trustee was not authorized to sell for the purpose of relieving the necessities of the plaintiff, Roxana, who was not the *wife* but the *widow* of the testator's son, *Haws* v. *Haws*, 3 Atk. 525 ; and as to the point, that trustees are entitled to protection when acting in the honest discharge of their duties,

Rathbun
*v.*
Colton.

*Sept. 28th,*
1833.

*Adair* v. *Shaw,* 1 Sch. & Lefr. 274 ; *Trafford* v. *Boehm,* 3 Atk. 444 ; *Hart* v. *Ten Eyck,* 2 Johns Ch. R. 76.

*Per Curiam.* The Court are inclined to the opinion, that the plaintiff, Roxana, is not one of the parties for whose necessities a sale is to be made by virtue of the will, but that this privilege. is confined to the sons and the daughter of the testator.

Upon a sale of the land, on account of the necessities of one or more of the testator's children, the relief to the widow of a son is incidental. In such case she is undoubtedly entitled, under the provisions of the will, to an account and to protection ; and the testator having given no particular directions for investing the proceeds, she might apply to this Court to prescribe the mode of investment.

The Court were also of opinion, upon all the facts in the case, (some of which are not above stated,) that it was not expedient to order a sale of the real estate in question.

The case was continued for advisement in respect to other questions, and at a subsequent term the opinion of the Court was delivered by

*Sept. 26th,*
1834.

WILDE J. The subject of the sale prayed for by the plaintiffs, was considered at a former term, and the part of the bill relating to that subject was then dismissed. The remaining questions raised by the exceptions to the report of the master were continued for advisement, and have been since considered. In delivering the opinion of the Court I shall first notice the exceptions to the master's report taken by the plaintiffs, passing over those relating to the subject of sale, and others which have been waived. The first in order is founded on a supposed collusion between the trustee and the lessee, to whom the trust estate has been let for a term of years not yet expired. There is, however, no evidence of any such collusion, nor any circumstance disclosed in the evidence which tends to impeach the good faith of the trustee in this, or any other transaction, relating to the trust. No attempt has been made to show that a higher rent could and ought to have been procured, but it is said that there is no evidence that the transaction was *bonâ fide.* It is sufficient

that there is no evidence to the contrary. It is for the plain-
tiffs to make good their charge ; every transaction is presumed
to be *bonâ fide* until the contrary appears.

The 6th exception relates to a sum of money received
by the trustee, and credited in the account rendered, for
damages awarded on laying out a road over the trust estate,
and the plaintiffs claim a share of this sum ; but by the will
they are only entitled to a share of the rents, and no part of
the estate, which is to be held by the trustee subject to the
trusts. The damages awarded must follow the disposition of
the estate ; but they are rightly credited by the trustee as they
are chargeable with the trustee's expenses, compensation, &c.
So far as these expenses &c. are not chargeable on the rents
and profits, they are to be charged to the estate. It is for the
interest of the plaintiffs, that the whole expenses of the trust
should be charged to the estate, rather than to the rents and
profits, and therefore there is clearly no ground for this ex-
ception.

We think, also, that there is no ground for the 7th excep-
tion. It appears by the master's report, that before the re-
pairs were made, the buildings on the premises were in a very
dilapidated state, rendering very expensive repairs essential to
their comfortable and profitable occupation ; that the trustee
being nearly destitute of funds, and being unwilling to incur
the hazard of making repairs, concluded to make sale of the
whole estate, believing that the necessities of Harvey Bates,
one of the *cestui que trusts*, were such as would have author
ized such a sale. Nevertheless he abandoned this project, on
the remonstrance of some of the *cestui que trusts*, who peti
tioned the judge of probate to remove him from his office, or
restrain him from going on with the sale ; and being admon-
ished by the judge of probate, although no decree was made,
that he would be removed, if he persisted in attempting to
make the sale. The plaintiffs' counsel contend, that it was
the duty of the trustee to persist in the sale, and if need be,
to appeal from any decree of the judge of probate to this
Court, as the supreme court of probate. Probably sucn a
course, if pursued, would have been unavailing, but it was not
the duty of the trustee to disregard the admonition of the

# 484 HAMPSHIRE, FRANKLIN AND HAMPDEN.

Rathbun
*v.*
Colton.

judge of probate, or to appeal from his judgment, unless he was requested so to do by some one having an interest in the trust estate. We think the trustee acted in good faith, and that he did right, under the circumstances reported, in abandoning, as he did, the intended sale, and in proceeding to make the necessary repairs.

The 8th exception relates to the allowance of sundry charges for repairs, which the plaintiffs contend ought not to have been allowed. The principle upon which these allowances were made, we think, is correct. Regard should be had to the probable duration of the trust, in determining whether temporary and slight, or more permanent and thorough repairs, should be made. Considering the ages of the *cestui que trusts*, and the use to be made of the buildings, we are of opinion, that the charges for repairs, as allowed by the master, are reasonable, and such as the trustee had a right to make.

The 9th exception refers to the charges for repairs made since the filing of the bill. It is objected, that after a prayer for an injunction and the admonition of one of the justices of this Court to the trustee, that he must proceed at his own risk, no allowance for repairs ought to have been made, and that it was the duty of the trustee to stay proceedings until the decision of the case. But this would be giving to the admonition of the Court, which was a mere caution, the force and effect of an injunction; which cannot be allowed. The Court did not undertake to decide or direct as to the necessity or propriety of the repairs about to be made. This point was left open to be decided on its merits.

The 15th exception is disallowed, for reasons which will be stated hereafter in considering one of the exceptions on the part of the trustee.

The remaining exceptions taken by the plaintiffs relate to the allowance made by the master to the trustee as compensation for his services; as to which, we think the allowance made by the master is reasonable, and that there is no objection in principle, or by the practice of this Court, to the allowance of commissions in connexion with an allowance of specific charges for services, provided the

whole does not exceed a just compensation. In which case the allowance of commissions is to be considered in lieu of all the remaining services not specifically charged. With regard to that part of the report in which the master allows the trustee to prefer a further account for services in superintending the repairs, we think there does not appear any good cause for opening again the subject of compensation. If the compensation allowed by the master was insufficient, those services ought to have been proved, so that the whole subject of compensation might have been passed upon, and the facts reported by the master. Upon the evidence submitted, we are of opinion that the allowance made by the master is a sufficient compensation.

I will in the next place consider the exceptions taken by the trustee, the first of which involves a question of considerable importance, and which is not free from doubt.

The master reports, that the rent of the trust estate was enhanced to the amount of $75 annually, in consequence of the improvements, the charges for which were objected to by the plaintiffs and disallowed by the master ; and that thereupon the trustee contended that he ought not to be held to account for this enhanced rent. The master reports, that the trustee's claim is perfectly just, and that at first he thought the plaintiffs might be put to their election, either to allow the charges for the improvements, or be deprived of the increased rent obtained by reason of them ; but not finding any authority for such a decision, he finally decided to the contrary. After fully considering the subject, it seems to us that the master's first thought is the best. The question is not, whether the trustee has a right to make any charge for these improvements, but whether the plaintiffs are entitled to receive any benefit from them, they refusing to contribute their share towards the expenses. There is certainly no equity in such a claim, and we are not aware of any precedent or principle which will authorize its allowance. Supposing that these improve ments had been made by the tenant without the consent of the trustee, no additional rent could have been demandable on that account ; and the same principle applies to the present case, in which the improvements were made with the consent

41 *

Rathbun
*v.*
Colton.

of the trustee. The plaintiffs have no interest in the improve ments, but are only entitled to their share of the rents which would have been received had no improvements been made. If the trustee had erected a new building at his own expense, which was not a fixture or so connected with the soil as that it could not be removed without prejudice, he would have a right, at any time before the termination of the trust, to pull down and remove it ; and in the mean time would only be ac countable for a ground rent. Such would be the right of a tenant, and the Court say, in the case of *Taylor* v. *Townsend,* 8 Mass. R. 416, that *a fortiori* the principle ought to apply to a mortgagee in possession, and, as we think, to any trustee , unless there be something in the terms or nature of the trust to restrain him. The reason why a trustee cannot erect new buildings, or make alterations or improvements, at the expense of the *cestui que trust,* is, because his interests may thereby be prejudiced ; a reason which cannot apply to the question under consideration. We are therefore of opinion, that the increased rent, as estimated by the master, ought to be de- ducted from the amount with which the trustee stands charged, unless the plaintiffs should elect to allow the charges for the improvements ; thereby entitling themselves to the full rent.

The next exception by the trustee depends on a clause in the will, the construction of which is not very clear. This clause is as follows : " And I further will and direct, that if either or all my children should become necessitous, and it should be adjudged by my said trustees more for the benefit of my said children to sell all or part of my said estate, for the benefit of either or all of my said children, they are hereby authorized to sell all or part thereof, and appropriate all or part of the proceeds thereof in proportions above stated, to the support of my said children, their heirs or wives."

The construction given to this clause by the master is, that whenever any sale of the trust estate should be madé, the proceeds should be divided in the proportions stated in regard to the rents and profits, and that no one can take more than his proportion upon such a dividend ; that the principal ought not to be paid out any faster than the necessities of those in terested require ; and that it ought to be placed at interest

and the interest be paid annually in lieu of the rents and profits. This undoubtedly is the only correct construction that can be given to the will, supposing that it were necessary to sell the whole estate. But we do not think, that the same construction ought to be applied to a partial sale like the present.

Whatever may be the literal construction of the clause in question, the general meaning seems to be, that no sale of the trust estate is to be made, but for the purpose of relieving the necessities of one or more of the *cestui que trusts* ; and that no larger sale is to be allowed than such necessities may require, unless, in the opinion of the trustee, such larger sale would be advantageous to all parties beneficially interested, or unless a sale strictly limited should be impracticable. It is true the trustee is directed to appropriate the proceeds of sale to the support of the testator's children, their heirs and wives, in certain proportions, but this is to be understood with the implied condition, that all should need support. It clearly was not the intention of the testator, that such appropriation should be made in favor of those who were otherwise sufficiently provided for. Probably the intention of this part of the will was merely to direct in what proportions, and to what extent, the *cestui que trusts* were severally entitled to support. We are therefore of opinion, that this is not a case in which the proceeds of sale are to be divided and appropriated as directed in the will. As a literal construction of this clause is inadmissible, being inconsistent with the intention of the testator as manifested in other parts of the will, we must adopt a reasonable construction, and such as will best effectuate the objects of the trust, and best promote the interests of all concerned.

Now we can see no reason for compelling the trustee to sell any more of the trust estate than may be required to relieve the necessities of one or more of the *cestui que trusts*, as the case may be. Suppose that the necessitous condition of Harvey Bates had been such as to require the whole of his share in the estate to be sold and appropriated to his support, would the trustee be obliged to sell the whole estate without regard to the interests of the other *cestui que trusts* ? Nothing

Rathbun
v.
Colton

but the most clear and unambiguous direction in the will would justify such a course to the prejudice of the other parties interested.   By the will the trustee is to sell all or a part of the estate, as may be most for the benefit of all concerned. It is a matter left to his discretion.   Having decided on a sale, he was bound, we think, to relieve the necessities of Harvey Bates to an extent not exceeding his share.   The amount paid for that purpose is accordingly allowed, and the surplus of the proceeds of sale is to be held for the purpose of discharging future expenses, and in the mean time the trustee is to be charged with interest, this surplus being a substitute for the estate sold and being subject to the same trusts.